## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**AMERICAN NATIONAL PROPERTY**
**AND CASUALTY COMPANY a/s/o PAUL COLVIN**                    **PLAINTIFF**

**V.**                                  **CASE NO. 5:18-CV-5250**

**BROAN-NUTONE, LLC, and**
**A.O. SMITH CORPORATION**                                  **DEFENDANTS**

### OMNIBUS OPINION AND ORDER ON MOTIONS IN LIMINE

There are three Motions in Limine before the Court, one filed by each party to this action.  Plaintiff American National Property and Casualty Company ("ANPAC") filed a Motion in Limine to Exclude Reference to Insurance (Doc. 80) and a Memorandum Brief in Support (Doc. 81).  Defendants A.O. Smith Corporation ("A.O. Smith") and Broan-Nutone, LLC ("Broan") each filed a Response in Opposition (Docs. 89 & 90).  Broan filed a Motion in Limine to Exclude Plaintiff's Expert Testimony (Doc. 77), accompanied by a Memorandum Brief in Support (Doc. 78).  ANPAC filed a Response in Opposition (Doc. 87) and a Memorandum Brief in Support (Doc. 88).  Finally, A.O. Smith filed a Motion in Limine containing six separate requests to exclude particular testimony or evidence (Doc. 79), to which ANPAC filed a Response in Opposition (Doc. 91) and Memorandum Brief in Support (Doc. 92).  The Court takes up each Motion below.  For the reasons given, ANPAC's Motion (Doc. 80) and Broan's Motion (Doc. 77) are **DENIED**.  A.O. Smith's Motion (Doc. 79) is **GRANTED IN PART AND DENIED IN PART**.

### I. ANPAC'S MOTION

ANPAC asks the Court to exclude reference to ANPAC as Mr. Colvin's insurer during the trial.  The Court understands that instead, ANPAC would like the trial to

proceed under the fiction that Mr. Colvin is bringing this suit to recover his damages, rather than the reality that his insurance company is suing as his subrogee to recover payment it has already made to Mr. Colvin pursuant to his insurance policy. ANPAC does not provide citations to any case in which the relief it seeks has been granted, nor has the Court found any such cases. Instead, ANPAC relies on Rules 401, 402, 403, and 411 of the Federal Rules of Evidence to argue that the Court should exclude mention of ANPAC because "ANPAC's role as Mr. Colvin's insurer . . . is irrelevant [and] identifying ANPAC as Mr. Colvin's insurer at trial will likely confuse the jury as to the real dispute of the case [and] result in unfair prejudice to ANPAC." (Doc. 81, p. 3). The Court disagrees. It will be far more confusing for everyone involved, including the jury, to maintain the fiction that Mr. Colvin is the plaintiff than to explain that ANPAC has paid Mr. Colvin's claim and now seeks to recover from Defendants. Nor is the Court persuaded that the posture of the case creates a risk of unfair prejudice for which ANPAC is entitled to a remedy or that this reality will "result in substantial amounts of trial time being devoted to arguments about insurance coverage." *Id.* In the absence of any binding precedent—or even persuasive case law—indicating that this is an appropriate course of action, the Court declines to create such a fiction, which has far more potential to mislead or confuse the jury than the actual posture of the case. Therefore, Plaintiff's Motion is **DENIED**.

## II.  BROAN'S MOTION TO EXCLUDE EXPERT TESTIMONY

Broan asks the Court to exercise its inherent equitable power to exclude the testimony of Plaintiff's experts, John Jenkins and David Montague, as a sanction for spoliation of evidence. Broan argues that Mr. Jenkins and Mr. Montague disrupted the scene of the fire by sifting the ash and removing artifacts without notifying Broan or

2

documenting the scene according to industry standards. As a result, Broan alleges, the company has been prejudiced because its experts, Jim Kuticka and Jim Miller, did not have adequate information to offer opinions in rebuttal. However, Broan does not argue that ANPAC, Mr. Jenkins, or Mr. Montague acted in bad faith; in fact, Broan acknowledges that "the actions of the Plaintiff's experts" were "no doubt done without malice." (Doc. 78, p. 17). Broan cites *Dillon v. Nissan Motor Co.*, 986 F.2d 263 (8th Cir. 1993), to support the proposition that "[a] finding of 'bad faith' is not necessary to issue such sanctions; rather, evidentiary destruction by a retained witness in litigation with knowledge of the relevance of such evidence" is sufficient. (Doc. 78, p. 2).

In response, ANPAC argues that this concession regarding bad faith is dispositive of Broan's Motion. Since *Dillon*, ANPAC asserts, the law of the circuit has developed such that "sanctions for spoliation are warranted for intentional destruction of evidence only and, further, require a finding of bad faith." (Doc. 88, p. 8 (citing *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012); *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006); *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004))). Whether evidence of bad faith is necessary to impose any form of sanction for spoliation is more nuanced than ANPAC acknowledges. Nevertheless, the Court agrees that no sanction is appropriate here.

"A court's inherent power includes the discretionary 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Stevenson*, 354 F.3d at 745 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). Spoliation of evidence can constitute such an abuse. *See Dillon*, 986 F.2d at 267. Courts apply federal law to determine whether to impose sanctions for spoliation of evidence. *Sherman*, 687

3

F.3d at 1006. "Before a sanction for destruction of the evidence is appropriate . . . there must also be a finding that the destruction prejudiced the opposing party." *Dillon*, 986 F.2d at 267.

In *Dillon v. Nissan Motor Co.*, the district court excluded testimony by an expert witness as a sanction for spoliation. 986 F.2d at 265. The court did so based on the magistrate judge's finding that the plaintiffs' expert "had destroyed crucial evidence but did not do so in bad faith." *Id.* at 266. The Eighth Circuit affirmed the district court's decision to exclude the expert's testimony when the expert and the plaintiffs' attorney "knew or should have known that [the evidence he destroyed] was an important piece of evidence which should have been preserved in its entirety." *Id.* at 267. The Eighth Circuit held that this finding was "sufficient for imposing sanctions," so long as the defendant had been prejudiced by the destruction of evidence. *Id.* The panel also noted that after the district court imposed the sanction, additional facts were disclosed that might in fact have supported a finding of bad faith. *Id.* at 267 n.3.

Eleven years later, in *Stevenson v. Union Pacific Railroad Co.*, the Eighth Circuit held that "there must be some indication of an intent to destroy the evidence for the purposes of obstructing or suppressing the truth in order to impose the sanction of an adverse inference instruction" and that the "knew-or-should-have-known" standard, would be insufficient to support that particular sanction. 354 F.3d at 747. The Eighth Circuit later extended the bad-faith requirement to "a more severe sanction, the outright dismissal of a plaintiff's case." *Menz*, 440 F.3d at 1006.

The panel in *Stevenson* recognized that its holding was in tension with *Dillon*. The *Stevenson* court mentioned the footnote in *Dillon* cited above, pointing to later-revealed

4

evidence of bad faith, but concluded that *Dillon* did not control the question before it because the sanction at issue was exclusion of evidence rather than an adverse inference instruction. *See Stevenson*, 354 F.3d at 747 n.2. Thus, while the Court takes ANPAC's point that the case law in the Eighth Circuit requires a finding of bad faith for an adverse inference instruction or dismissal, the circuit court has not explicitly reversed *Dillon* to require a finding of bad faith to impose the sanction of exclusion of evidence. *See Stewart v. Nucor Corp.*, 2014 WL 12611316, at *3–*4 (E.D. Ark. Dec. 8, 2014) (recognizing that the standard for exclusion of evidence may not be the same as the standard for an adverse jury instruction or outright dismissal of the case).

On the other hand, the *Dillon* court underscored that "whether the extent of a sanction is appropriate is a question peculiarly committed to the district court." *Dillon*, 986 F.2d at 268. "The district court, familiar with the case and counsel, receives substantial deference in determining sanctions." *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007). "[W]here a court expressly finds . . . that there is no evidence of intentional destruction of evidence to suppress the truth, then the district court also acts within its discretionary limits by denying sanctions for spoliation of evidence." *Gallagher v. Magner*, 619 F.3d 823, 845 (8th Cir. 2010). Therefore, even if the Court has the authority to exclude the testimony of Plaintiff's expert as a sanction if Mr. Jenkins and Mr. Montague destroyed evidence they knew or should have known was important to the litigation, it declines to do so here.

First, it is important that the initial investigation of the scene was done to determine the origin and cause of the fire, not specifically in preparation for litigation. *Cf. Gallagher*, 619 F.3d at 845 ("To be sure, a district court does not abuse its discretion by imposing

sanctions, even absent an explicit bad faith finding, where a party destroys specifically requested evidence after litigation has commenced."). Broan argues that Mr. Jenkins and Mr. Montague should have anticipated, when they were hired by ANPAC to examine the scene of the fire, that litigation might arise out of the incident and preserved the scene until Broan sent its own expert to participate. The Eighth Circuit rejected this type of reasoning in *Greyhound Lines*: In response to the defendant's argument that the plaintiff "had a duty to preserve . . . data [from the vehicle's electronic control module] because litigation was likely," the Eighth Circuit stated that the "ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating a desire to suppress the truth, not the prospect of litigation." 485 F.3d at 1035 (citing *Morris v. Union Pac. R.R.*, 373 F.3d 896, 901 (8th Cir. 2004)). This logic is just as compelling where, as here, the experts did not know when they began their investigation what caused the fire or whether there would be subsequent litigation. Mr. Jenkins and Mr. Montague had to examine the scene and the artifacts collected there in order to identify the bathroom exhaust fan as the alleged cause of the fire and Broan as its manufacturer.

For this reason, some alteration of the scene is likely unavoidable in identifying possible parties with interest where there has been a fire. Nevertheless, the Court takes the point that Mr. Jenkins and Mr. Montague could have documented their investigation more thoroughly and better preserved evidence for subsequent examination. *Cf. Shaffer v. Ford Motor Co.*, 360 F. Supp. 2d 960, 961 (W.D. Ark. 2004) (denying a motion for sanctions where the insurance company's investigator "rearranged and moved debris and other remains during the process of ascertaining the source of the fire," took photographs as he did so, and "[o]nce he observed 'arcing' in the wiring associated with the car battery,

he ceased any further investigation of the automobile" and preserved the scene for further examination).    Therefore, assuming without deciding that ANPAC's experts altered evidence they knew or should have known should be preserved, the Court will turn to the issue of prejudice. Broan asserts that it has suffered "substantial" prejudice. Mr. Kuticka was unable to identify a fire origin because ANPAC's experts had removed the debris from the bathroom in the course of processing the scene, (Doc. 78-4, pp. 29–30), and Mr. Miller opined that there are portions of circuitry and wiring that should have been examined but were not preserved or documented.  (Doc. 88-2, pp. 37–38).  Additionally, Mr. Jenkins acknowledged that the process of sifting the debris at the scene should have been documented more thoroughly. (Doc. 79-1, p. 12).

In light of each party's burden at trial, however, the Court disagrees that Broan has suffered prejudice that must be remedied by a sanction. ANPAC will rely on circumstantial evidence to prove its claims.  As the Court pointed out in its Memorandum Opinion and Order on Defendant's motion for summary judgment, this means it will be ANPAC's burden to "negate[] other possible causes of the fire by a preponderance of the probabilities."  (Doc. 69, p. 6).   Despite the alleged lack of thorough photographic documentation of the investigation, Broan's experts were able to develop opinions that cast doubt on ANPAC's theory of the fire. For example, Mr. Kuticka testified at deposition that he identified "the southwest corner, southeast corner, as well as the south ceiling area of the bathroom" as potential points of origin of the fire, (Doc. 88-1, p. 38), though he agreed that the fan was most likely located in the northwest corner of the bathroom, id. at p. 40. Similarly, Mr. Miller concluded in his report that "the switch for the bathroom light and fan was in the 'OFF' position at the time of the fire" and that there was "no

7

objective, scientific evidence to support [the allegation that the] fan was energized at the time of the fire or malfunctioned and caused this fire." (Doc. 88-3, p. 7). At trial, Broan will have the opportunity to cross-examine ANPAC's experts and present the competing testimony of its own experts to the jury. This is sufficient to ensure Broan suffers no unfair prejudice.

### III. A.O. SMITH'S MOTION

Defendant A.O. Smith filed a Motion that contains six numbered requests for relief, which the Court will refer to as Numbers 1 through 6. Number 5 asks that ANPAC not be permitted to offer evidence of a specific defect in the fan motor because it has never disclosed such an opinion. Number 6 requests that ANPAC be precluded from referencing details of Tammy Preston's family status. Numbers 5 and 6 are undisputed by Plaintiff and are therefore **GRANTED**.

In Number 1, A.O. Smith joins Broan's request that ANPAC's experts be barred from testifying as a sanction for spoliation of evidence. Number 4 provides additional arguments why Mr. Jenkins in particular should be barred from testifying. Since these two requests are related, the Court will take them up together. A.O. Smith incorporates the facts and arguments from Broan's Motion. In addition, it alleges that it has suffered even more significant prejudice because A.O. Smith did not receive notice of its possible interest in the fire scene until more than a year and a half later, when ANPAC filed its first amended complaint in this case. Experts hired by A.O. Smith therefore never had the opportunity to examine the scene of the fire in person. A.O. Smith argues that as a result of this delay and ANPAC's experts' inadequate documentation of their examination, the company has been denied access to potentially exculpatory evidence. A.O. Smith

explicitly states that it "agrees with Broan that there is no evidence of ANPAC intentionally or maliciously engaging in spoliation." (Doc. 79, p. 3). In Number 4, A.O. Smith argues further that Mr. Jenkins should be barred from testifying because he conceded that he spoliated the scene of the fire, denying A.O. Smith's expert the opportunity to develop an opinion about the case.

The Court denies Numbers 1 and 4 for the same reasons discussed above. Mr. Montague, ANPAC's expert who examined the fan, testified that he identified Broan as the manufacturer of the fan "because the manufacture data is stamped in the metal of the—some of the components of the fan" but that he "had no idea whether Broan had sourced their motor from one [original equipment manufacturer ('OEM')] or multiple OEMs." (Doc. 79-2, pp. 142–43). Broan, rather than ANPAC, was in the best position to identify manufacturers of component parts who might be interested parties. A.O. Smith's identity was only made known to ANPAC many months after the fire. In fact, it is the Court's understanding that A.O. Smith continues to dispute that it manufactured the motor in the fan installed at Mr. Colvin's residence. The Court cannot conclude that the delay in placing A.O. Smith on notice was due to any wrongdoing or negligence by ANPAC.

And as with Broan, even if A.O. Smith's investigation was hindered by the alteration of the scene without adequate documentation by ANPAC's experts, the Court concludes that the cross-examination of ANPAC's witnesses at trial and presentation of rebuttal evidence will be adequate to address any perceived prejudice. For example, Cory Reeves, an expert retained by A.O. Smith, testified at his deposition that based on the physical evidence at the scene "[t]here is absolutely no way that the point of origin of this fire could have been at the fan." (Doc. 79-9, p. 39). The electrical expert retained by

A.O. Smith, Thomas Bajzek, also disagreed with Mr. Montague's conclusions and examination of the wiring in the bathroom. *See* Doc. 79-5, p. 23. Therefore, A.O. Smith will be able to defend itself through cross-examination and by having its experts testify to the ways in which they believe Mr. Jenkins and Mr. Montague's examinations were inadequate or inaccurate.

In Number 2, A.O. Smith seeks to exclude portions of the report written by Officer Ledbetter, fire marshal of the Washington County Sheriff's Office. As a threshold matter, Defendant argues that the entire report is inadmissible hearsay. Should the Court find than an exception covers the report, A.O. Smith asks that the Court nevertheless exclude his conclusion regarding the origin of the fire as untrustworthy. In response, ANPAC asserts that the hearsay exception laid out in Rule 803(8) of the Federal Rules of Evidence applies to Officer Ledbetter's report and that the best remedy for any potential lack of reliability is the cross-examination of Officer Ledbetter, whom all parties indicate they intend to call as a witness at trial.

Rule 803 provides exceptions to the rule against hearsay. Rule 803(8) provides that a record or statement of a public office is not excluded if "it sets out . . . a matter observed while under a legal duty to report . . . [as long as] the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." The Court finds that Officer Ledbetter's report of his investigation, conducted in his capacity as fire marshal of Washington County, is a public record as defined in Rule 803(8)(A).[1] A.O. Smith therefore has the burden to establish that the report is not

---

[1] The report is limited to Fire Marshal Ledbetter's findings upon examination of the fire scene. The report does not include witness statements or other potential hearsay that would require further analysis under Rule 805.

trustworthy. In his report, Officer Ledbetter stated that "[t]he scene examination showed

the fire originated in the ceiling of a bathroom. The fire originated at an exhaust fan

assembly in the ceiling of the bathroom. . . . It is recommended a professional examination

of the exhaust fan assembly." (Doc. 79-6, pp. 3–4). A.O. Smith asks that this conclusion

that the fire "originated at an exhaust fan assembly in the ceiling of the bathroom" be

excluded because Officer Ledbetter later contradicted this conclusion in the following

exchange with counsel for A.O. Smith during his deposition:

> Q: Just to be clear, you're not sitting over there saying that the fire started
> at the fan assembly, right? That's something you wanted to have further
> investigated –
> A: That's correct.
> Q: -- but you didn't do that investigation. Is that fair?
> A: I didn't do that
> Q: You're not saying that was the point of origin, true?
> A: It's in that area.
> Q: You're saying it was in – within the area of origin.
> A. Yeah. That – that fan assembly was in the area of origin.
> Q: So it needed to be further investigated.
> A: Yeah.

(Doc. 79-7, p. 14). A.O. Smith argues that this exchange shows that Officer Ledbetter's

report is untrustworthy and cannot fall within the hearsay exception created by Rule

803(8).

The Court finds that A.O. Smith has not met its burden to demonstrate that Officer

Ledbetter's report is untrustworthy. A.O. Smith does not suggest that the investigation

was untimely, that Officer Ledbetter was not skilled and experienced in his field, or that

he lacked objectivity in conducting his investigation. *See Simmons v. Chi. & Nw. Transp.*

*Co.*, 993 F.2d 1326, 1327 (8th Cir. 1993) (noting its approval of a Sixth Circuit case, *Baker*

*v. Elcona Homes Corp.*, 588 F.2d 551 (6th Cir. 1978), that considered such factors in

determining the trustworthiness of a report pursuant to Rule 803(8)). Rather, A.O. Smith's

objection regarding a possible inconsistency between the Officer's report and his subsequent deposition goes to weight and credibility, not admissibility. *See Baker*, 588 F.2d at 558–59 ("The plaintiffs' objections [regarding the accuracy of the officer's conclusions in his report] go not so much to admissibility as to weight and credibility, matters which are essentially for the jury to consider.").

A.O. Smith argues in the alternative that the report should be excluded pursuant to Rule 403.  Rule 403 provides that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ."  The Court disagrees with A.O. Smith's assessment.  To lay the foundation to admit the report into evidence, the Court *will* require ANPAC to put Officer Ledbetter on the stand.  Counsel for A.O. Smith will have the opportunity to cross examine Officer Ledbetter about his report and to impeach him using his deposition if they believe his testimony to be inconsistent.  Therefore, the Court concludes that there would not be substantial unfair prejudice to A.O. Smith or confusion for the jury.

Finally, in Number 3, A.O. Smith asks the Court to exclude Mr. Montague's opinion regarding the cause of the fire because it is incomplete and unreliable.  This is inappropriate for a motion in limine.  The amended case management order in this matter directs that "*Daubert* and related expert disqualification motions should be filed no later than **FEBRUARY 3, 2020**." (Doc. 16, p. 3 (emphasis in original)).  Arguments regarding the robustness and reliability of expert opinions are the quintessential substance of *Daubert* motions.  *See, e.g., Giles v. Miners, Inc.*, 242 F.3d 810, 812 (8th Cir. 2001) ("Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–92 (1993), the

district court acts as 'gatekeeper' to screen expert testimony for relevance and reliability."). The deadline for such motions having long passed, Defendant's attempt to frame such a request as a motion in limine must be **DENIED**.[2]

### IV. CONCLUSION

In summary, Plaintiff ANPAC's Motion (Doc. 80) and Defendant Broan-Nutone's Motion (Doc. 77) are **DENIED**. Defendant A.O. Smith's Motion (Doc. 79) is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted as to Numbers 5 and 6, which were undisputed by Plaintiff. Numbers 1 through 4 are denied.

**IT IS SO ORDERED** on this 30th day of October, 2020.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[2] The motion would be denied on its merits even if it had been properly characterized and timely filed. A.O. Smith criticizes Mr. Montague for failing to preserve and/or inspect a sufficient length of electrical wiring in forming his opinions. The Court finds that Mr. Montague's opinion is based on sufficient facts and data and otherwise chins the bar of Rule 702. A.O. Smith's expert may disagree with Mr. Montague's methods, but that criticism goes to the weight of Mr. Montague's opinion, not its admissibility.